UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**LEXINGTON**

| | |
|---|---|
| MARY HEDGES, ET AL., | ) Civil Action No. 5:05-442-JMH |
| Plaintiffs, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| PFIZER INC., ET AL., | ) |
| Defendants. | ) |

\*\*    \*\*    \*\*    \*\*    \*\*

Before the Court are the plaintiffs' motions to remand [Record No. 5] and to take jurisdictional discovery [Record No. 11]. Defendants also filed a motion to stay [Record No. 8]. The motions having been fully briefed, the matters are ripe for review.

### I. BACKGROUND

*A.  Procedural Background*

The plaintiffs originally filed this action in Boyle Circuit Court, alleging harm caused by the prescription drug Bextra. The complaint asserts product liability claims against Pfizer, Inc. ("Pfizer"), the seller of the drug, and negligence claims against the physician, Mohammad F. Shahzad, M.D. ("Dr. Shahzad or the physician"),[1] who allegedly prescribed the drug to the plaintiff,

---

[1] The complaint also includes claims against Enlow & Shahzad Associates in Medicine, P.S.C., Dr. Shahzad's employer, but as these claims are entirely derivative of the claims against the physician, they need not be considered separately.

In addition, Plaintiffs make claims against pharmaceutical sales representatives named as John Does. These fictitious

Mary Hedges ("Ms. Hedges").[2] Pfizer removed the action to this Court, claiming that the Court has subject matter jurisdiction based on diversity. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 1332(a). Plaintiffs are citizens of Kentucky, Pfizer is a citizen of Delaware and New York under 28 U.S.C. § 1332(c)(1), and the amount in controversy exceeds the jurisdictional minimum. Dr. Shahzad is a citizen of Kentucky and, thus, Plaintiffs argue that his presence in the suit destroys diversity. Pfizer contends, however, that the physician was fraudulently joined solely for the purpose of avoiding federal jurisdiction.

B.  *Related Actions Against Merck, Inc.*

The complaint in this action is very similar to the complaints in several cases against Merck, Inc. ("Merck"), who is not a party to this action. Merck manufactures Vioxx, that, like Bextra, is a type-two cyclooxygenase inhibitor ("COX-2") that was designed and used to treat pain and inflamation.

The plaintiffs in several cases against Merck in this Court were successful in arguing that removal was improper because the physicians that prescribed Vioxx were not fraudulently joined. *See e.g., Cordle v. Merck, Inc.*, No. 0:05-CV-191, 2005 WL 3529655, at *4-5 (E.D. Ky. Dec. 22, 2005). This Court held that although the

---

defendants will be disregarded for purposes of this motion. 28 U.S.C. § 1441(a).

[2] The remaining plaintiffs in this action are Ms. Hedges's children.

complaints primarily alleged claims against Merck, the plaintiffs stated colorable negligence claims against the physicians under state law.

*C. The Complaint Against Pfizer*

In the current case, the complaint alleges that Ms. Hedges was prescribed Bextra by Dr. Shahzad from September 24, 2002, until sometime in October of 2002. The complaint states that COX-2 inhibitors, like Bextra, have adverse cardiovascular risks, including blocking anti-coagulants that inhibit platelet aggression. It alleges that on October 10, 2002, Ms. Hedges suffered a heart attack and that Bextra was a substantial factor in causing her injuries.

The complaint alleges that Pfizer knew prior to submission of Bextra to the Food and Drug Administration ("FDA") that COX-2 inhibitors could be harmful to potential users and that the company "actively contrived to conceal and minimize this fact for fear that it would hurt sales of the drug." (Pl.'s Compl. ¶ 23.) According to Plaintiffs, Pfizer never studied the possible cardiovascular effects of COX-2 inhibitors on patients taking Bextra and "never advised health care providers or patients of its failure to conduct such studies." (*Id*. ¶ 24.)

The complaint alleges that Pfizer "was aware that other researchers had also confirmed in both human and animal studies the likelihood of serious cardiovascular risk with the use of COX-2

3

inhibitors and that further trials were necessary. . . ." Further, it alleges that the FDA safety review for Bextra noted that Pfizer was unable to answer the extent of risk of adverse cardiovascular events for patients taking the drug.

The complaint mentions that Merck's study on Vioxx, known as the VIGOR study, found that patients using Vioxx had double the rate of serious cardiovascular events compared to those on a comparable drug, and a four-fold increase in risk of a heart attack. In 2000, these results were published in the New England Journal of Medicine. Then, in 2001, the Journal of American Medical Association published a peer review study of the several trials, including the VIGOR trial. The complaint states that the study concluded that "it was mandatory to conduct a trial" concerning cardiovascular risk for "this new class of medications." (*Id.* ¶ 35.) After being asked to voluntarily withdraw Bextra from the market by the FDA, Pfizer suspended sales and marketing in the United States in April of 2005.

Plaintiffs assert strict liability, negligence, failure to warn, fraud, false advertising, misrepresentation, breach of warranty, and Consumer Protection Act claims against Pfizer.

D. *The Claims Against the Physician*

Count nine of the complaint states a negligence claim against Dr. Shahzad. The plaintiffs incorporate the history of the emerging knowledge of the dangers of Bextra, Vioxx, and COX-2

inhibitors in general in the first paragraph of the count. The complaint alleges that regardless of the fraud of Pfizer, Dr. Shahzad "knew or should have known that Bextra posed real and substantial risks of adverse cardiovascular events, but failed to fully and adequately consider those risks or disclose them to [Ms. Hedges] before dispensing or prescribing Bextra." (*Id.* ¶ 142-43.)

The complaint alleges that Dr. Shahzad was negligent by:

> failing to be aware of or consider the real and substantial risks that Bextra posed of adverse cardiovascular events; failing to determine whether treatment with a COX-2 selective inhibitor was appropriate or indicated because of gastrointestinal or other risks to Mary Hedges; failing to obtain informed consent, including the failure to inform Mary Hedges of adverse events associated with Bextra and failing to provide adequate and complete instructions for safe use of the drug.

(*Id.* ¶ 144.)  The only facts alleged in support the allegations are that: 1) Dr. Shahzad prescribed Bextra to Ms. Hedges; 2) there were various studies that indicated cardiovascular risks associated with Bextra, Vioxx, and COX-2 inhibitors in general; and 3) Ms. Hedges suffered a heart attack. Plaintiffs argue that these facts are sufficient to state a claim against Dr. Shahzad that he knew or should have known about the dangers of Bextra and disclosed these risks to her.

**II. ANALYSIS**

A.  *Fraudulent Joinder*

A case may only be removed if it could have been originally

5

brought in federal court, and as there is no federal question, jurisdiction is only proper if the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 1332. "[A] party seeking to bring a case into federal court carries the burden of establishing diversity jurisdiction." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (internal quotation marks omitted).

The only issue is whether the Dr. Shahzad was fraudulently joined.[3] The burden is on the defendants to show fraudulent joinder, and as with any dispute over removal, all doubts are to be resolved against removal. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999); *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne*, 183

---

[3] Plaintiffs also argue that removal was defective because Pfizer failed to obtain the consent of all defendants to removal. While the statutes authorizing removal do not explicitly state that removal can be effected only with the consent of all defendants, the case law is clear that all named defendants must either join in the notice of removal or file notices demonstrating consent to removal. *See, e.g.*, *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533-34 (6th Cir. 1999). A removing defendant, however, need not obtain the consent of parties who are fraudulently joined. *See Constant v. Wyeth*, 352 F. Supp. 2d 847, 849 (M.D. Tenn. 2003). Accordingly, whether removal was defective based on a lack of consent is entirely dependent on whether the non-diverse physician was fraudulently joined, and it need not be addressed separately.

F.3d at 493.

The Sixth Circuit has held that "if there is a colorable basis for predicting that a plaintiff *may* recover against non-diverse defendants, th[e] Court *must remand* the action to state court." *Id.* (emphasis added); *see also Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) ("[T]he inquiry is whether [the plaintiff] had at least a colorable cause of action."). Any ambiguities in the relevant state law must be taken in the light most favorable to Plaintiffs. *See Alexander*, 13 F.3d at 949. Thus, the question before the Court is not whether Plaintiffs will prevail at trial on their claims against the physician. The question is not even whether the Court believes that the physician was in fact joined to defeat diversity. *See Jerome-Duncan*, 176 F.3d at 907 (holding that a plaintiff's motive in joining a non-diverse defendant is "immaterial to our determination regarding fraudulent joinder"). The question is whether, resolving all ambiguities in favor of Plaintiffs, Pfizer has shown that there is no colorable basis for predicting that Plaintiffs could prevail in state court.

Several courts have noted that the standard for a defendant to show fraudulent joinder is even higher than the standard for succeeding on a motion to dismiss under Federal Rule 12(b)(6). *See Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838, 845-46 (S.D. Ohio 2002) (*citing Batoff v. State Farm Ins. Co.*, 977 F.2d 848 (3d

7

Cir. 1992); *Hartley v. CSX Transp., Inc.*, 187 F.3d 422 (4th Cir. 1999)). As the Third Circuit has noted, "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted." *Batoff*, 977 F.2d at 852. "[T]he benefit of the doubt given a plaintiff as part of the fraudulent joinder inquiry should be more deferential than even that given under Rule 12(b)(6). . . . [A] decision overruling a motion for remand where the defendant is claiming fraudulent joinder connotes that a plaintiff's claim, as to the non-diverse defendant, has no basis in law or reason." *Little*, 227 F. Supp. 2d at 846-47; *see also Batoff*, 977 F.2d at 852 (holding that a party is not fraudulently joined if the claims against them are not "wholly insubstantial and frivolous").

Pfizer makes two principal arguments in support of fraudulent joinder. First, Pfizer argues that Plaintiffs' claims against the physician are wholly conclusory. Second, Pfizer argues that Plaintiffs' claims against the physician are inconsistent with their allegations against Pfizer. As the fraudulent joinder inquiry depends on whether Plaintiffs have stated a colorable claim against the non-diverse defendant in state court, *see Coyne*, 183 F.3d at 493, the Court must assess Plaintiffs' complaint in light

8

of Kentucky law, and to this the Court now turns.[4]

*B. Conclusory Pleadings*

It is no doubt true, as Pfizer points out, that the overwhelming majority of Plaintiffs' complaint asserts allegations against Pfizer and a mere page and a half of the complaint asserts claims against the physician. Pfizer maintains that the small amount of allegations against the physician are conclusory and do not allege sufficient claims under state law. The Court, therefore, must determine whether the complaint states sufficient facts to sustain a claim against Dr. Shahzad under Kentucky law.

Medical negligence claims have the same elements as traditional negligence claims, including: (1) duty; (2) breach of duty; (3) causation; and (4) injury. "[I]n Kentucky, a physician has the duty to use the degree of care and skill expected of a competent practitioner of the same class and under similar circumstances." *Grubbs v. Barbourville Family Health Ctr.*, 120 S.W.3d 682, 687 (Ky. 2003); *see also Wheeler v. Baptist Healthcare Sys., Inc.*, No. 00-5518, 14 Fed. App. 559, 561 (6th Cir. 2001). Kentucky recognizes a physician's failure to obtain informed

---

[4] Pfizer filed a motion to stay in this case, arguing that the issue of fraudulent joinder should be determined after transfer to MDL. Because the determination of whether the physician has been fraudulently joined depends on whether Plaintiffs have stated a claim under state law, *see Coyne*, 183 F.3d at 493, the MDL court would have to make fifty separate determinations. Although courts have gone both ways on this issue, this Court believes that it is in the interest of efficiency to rule on the motion to remand before transfer.

9

consent as an actionable form of negligence. *See Hawkins v. Rosenbloom*, 17 S.W.2d 116, 118-19 (Ky. Ct. App. 1999).

Plaintiffs' complaint alleges that Dr. Shahzad prescribed Bextra to Ms. Hedges from September of 2002 until October of 2002. It alleges that various studies conducted prior to this time discussed the cardiovascular risks of Bextra, Vioxx, and COX-2 drugs generally. Therefore, Plaintiffs argue that Dr. Shahzad knew or should have known of the risks associated with Bextra and should have disclosed these risks, notwithstanding Pfizer's alleged attempts to conceal the risks.

Kentucky's Civil Rules, like the Federal Rules of Civil Procedure, require only that a plaintiff state a claim with sufficient specificity so that defendants receive fair notice of the claims against them. As the Kentucky Court of Appeals explained, "[u]nder the theory of 'notice' pleading adopted by the Civil Rules a complaint will not be dismissed for failure to state a claim unless it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim. *It is immaterial whether the complaint states 'conclusions' or 'facts' as long as fair notice is given.*" *Pierson Trapp Co. v. Peak*, 340 S.W.2d 456, 460 (Ky. 1960) (emphasis added and internal citations omitted); *see also Morris v. Cabinet for Families & Children*, 69 S.W.3d 73, 74 (Ky. 2002) ("The principal objective of a pleading is to give fair notice to the

10

opposing party.").

Vague and conclusory though Plaintiffs' allegations against the physician may be, Plaintiffs have met the standard required for pleading negligence. Plaintiffs have alleged a breach of the Dr. Shahzad's duty by failing to know, failing to consider, and failing to inform Ms. Hedges of the risks of Bextra as a reasonable physician would have. Plaintiffs have alleged that Ms. Hedges was injured and that this injury was caused in part by the physician's failure to meet his duty.

There are sufficient facts alleged such that Dr. Shahzad would have fair notice of the claims and be able to frame an answer. Dr. Shahzad could answer, for example, by stating that he was unaware of the dangers and that a reasonable physician would not have encountered the information described in the complaint until after harm had already befallen Mrs. Hedges. He might even be right, but what a reasonable physician would have known is surely a matter for the jury and not a matter for the Court on a motion to remand. As the complaint gives Dr. Shahzad fair notice of the claims against him, it will not be held insufficient merely because the allegations are phrased largely as conclusions rather than as facts. See *Pierson Trapp Co.*, 340 S.W.2d at 460.

Moreover, even if the Court believed that the complaint against the physician was too conclusory to state a claim, there is a remedy short of finding fraudulent joinder. As Judge Caldwell

11

recently recognized in a well-reasoned opinion rejecting allegations of fraudulent joinder, if a complaint is too vague, a defendant's remedy is to seek a more definite statement. *See Asher v. Minn. Mining & Mfg. Co.*, No-04-CV-522, 2005 WL 1593941, at *3 (E.D. Ky. June 30, 2005). In *Asher*, a defendant argued that the complaint lacked specificity in its claims against the non-diverse defendants and therefore that those defendants were fraudulently joined. Judge Caldwell rejected that argument, holding that "[t]he Defendants' proper recourse under Kentucky state law . . . would be to request a more definite statement under CR 12.05. The Complaint would not be dismissed because of the alleged deficiencies."[5] *Id.*; *see also Little*, 227 F. Supp. 2d at 843 (remanding suit against drug manufacturer and non-diverse pharmacies even though "[t]he pleadings are general in their nature; the specifics few").

The Court cannot find that the allegations against Dr. Shahzad are so bereft of factual underpinnings that he is fraudulently joined. Reading the complaint in the light most favorable to Plaintiffs, the allegations include facts that go to duty, breach, harm, and causation, and the Court believes that the physician has

---

[5] In a similar fashion, the District Court for the Southern District of Ohio noted, in response to a claim that parties had been fraudulently joined, that a federal court should not deny remand based on factual deficiencies in the pleadings when the plaintiffs would have the opportunity to amend their complaints in state court. *See Little*, 227 F. Supp. 2d at 847; Ky. R. Civ. P. 15.01 (following Fed. R. Civ. P. 15(a) and directing that leave to amend "be freely given when justice so requires").

received fair notice of the claims against him. If Dr. Shahzad feels that the complaint is too conclusory, his remedy is to move the state court for a more definite statement.

*C.  Inconsistent Pleadings*

Pfizer also argues that the claims against the physician are inconsistent with the main thrust of the complaint, which is that Pfizer engaged in a program of concealing the risks of Bextra from not only the public, but from the medical community as well. According to Pfizer, if it is true that they concealed this information from Dr. Shahzad, then it is impossible that Plaintiffs will be able to show that he knew or should have known of the risks.

This argument fails for two reasons. First, giving Plaintiffs the benefit of all doubts, it is not clear that the allegations against Pfizer are necessarily inconsistent with the allegations against the physician. It is perfectly plausible that a drug manufacturer could engage in a pattern of concealing information about a drug's risks and, yet, that a reasonable physician would still have known of the risks from the information that had come out to the public. Plaintiffs allege that certain information about the risks of Bextra was publicly known at various times, notwithstanding Pfizer's concealment and that even aside from specific information about Bextra, the cardiovascular risks associated with COX-2 inhibitors were known before the approval of

13

Bextra.

Second, the Kentucky Civil Rules, like the Federal Rules, allow alternative or inconsistent pleadings: "A party may . . . state as many separate claims . . . as he has regardless of consistency."  Ky. R. Civ. P. 8.05(2).  Several courts have rejected the argument that it is a fatal flaw for a plaintiff to argue that a drug company withheld information from the medical community and at the same time that a physician should have known of the risks of a particular drug.  *See, e.g.*, *Collins v. Bacon*, No. 1:05-CV-211, 2005 WL 2429844, at *3 (E.D. Tenn. Sept. 30, 2005); *Lauderdale v. Merck & Co.*, No. 1:01-CV-418, 2002 WL 449423, at *2-3 (N.D. Miss. Feb. 4, 2002).  Although other courts have ruled the other way on this issue, this Court does not find that the partial inconsistency in Plaintiffs' complaints means that Plaintiffs do not have a colorable claim against the physician in state court.

### III. CONCLUSION

Although the complaint in this case is not the model of clarity, and the bulk of the allegations relate to the conduct of Pfizer, the Court cannot find that it is so deficient as to warrant a finding of fraudulent joinder.  The burden on a defendant seeking to prove fraudulent joinder is high, and Pfizer has not met that burden.  Plaintiffs state a claim against the non-diverse physician that may be colorable in state court, which is all that they must

do for their motion to remand to be granted.

Accordingly, and for the foregoing reasons, **IT IS ORDERED**:

(1) That Plaintiffs' motion to remand [Record No. 5] be, and the same hereby is, **GRANTED.**

(2) That all other pending motions be, and the same hereby are, **DENIED AS MOOT.**

(3) That this action be, and the same hereby is, **REMANDED** to Boyle Circuit Court.

This the 20th day of January, 2006.



Signed By:

*Joseph M. Hood*

United States District Judge